No Fee



IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA              )    Criminal No. 14-213
                                       )
          v.                           )    (21 U.S.C. § 846)
                                       )
                                       )    ED CV19 - 02337-JGB-SP
LIONEL CANNON a/k/a Cannon             )
                                       )
                                       )

---

### MOTION TO REVERSE FORFEITURE JUDGMENT

**Pursuant to 21 USC § 853 (a)(p) Fed. R. Civ. P 32.2 (c)(1)(B)**
**and**
**MOTION UNDER Fed. R. Crim. P. 41 (g) for Return of Property**
**In Re: Theft of $219,000.00 by Fired FBI Agent Scott Bowman**

---

Now Comes, defendant Lionel Cannon requesting this honorable Federal District

Court to order the return of stolen currency by fired (former) FBI Agent Scott

Bowman and other damages as this court deems appropriate.

### STATEMENT OF JURISDICTION

This court has jurisdiction to hear and to decide this matter under 28 USC 1331,

as well as ancillary jurisdiction.  Additionally jurisdiction lies in 28 USC 2401.

### FACTUAL SUMMARY

Defendant has been unable to resolve this matter with the F.B.I. administratively.

See U.S. v. Currency, $83,310.78, 851 F.2d. at 1235 and is requesting for this

Honorable Court to craft an equitable remedy. (See Exhibit 1 "Letter Dec 3,

2018 from F.B.I.") Pursuant to 28 USC § 2401 (b).  As in U.S. v. Currency $83,

310.78  851 F.2d. 1235 "these" extraordinary circumstances where a fired FBI

Agent admits to stealing this money while employed by the FBI, defendant states

that jurisdiction does exist    for the court to grant the requested equitable

relief, including the award of damages. The government must demonstrate probable

cause to believe that the property was involved in an illegal drug-related

transaction. U.S. v. $5,644,540.00 In Currency 799 F.2d. 1357, 1362 (9th Cir. 1986)

Propbable cause is shown if the government produces "less than prima facie proof

but [more than mere speculation]" U.S. v. One 56-foot yacht nameed Tahuna, 702

F.2d. 1276, 1282 (9th Cir. 1983). The aggregate facts in this case do not give

rise to more than mere suspici on that the currency was exchanged for or intended

to be exchanged for drugs. U.S. v. $5,644,540.00 in currency 799 F.2d. at 1363.

Upon applying the "aggregate of facts" test, this honorable court will find "no

single fact is dispositive with regard to the probable cause issue. The facts in

the affidavit within this motion shows that Fed. r. Crim. P. 41 (g) does apply

where defendant is a person aggrieved by an unlawful search and seizure of property

or by the deprivation of property and he has now moved for the [return of his

property]. In conformity with this rule this motion is filed in the district where

the property was seized The factual evidence needed to grant this motion is

stated within this motion. When this court grants this motion the court must

return the property to the movant. If the court reaches the merits of "a motion

for return of property and determines a paticularly egregious violation a return

of the eproperty should follow. In this case the Government's conduct was suffic-

iently reprehensible to warrant this sanction. Ramsden 2 F.3d at 327 CA9. Facts

in this motion will also show that a callous disregard for movant's constitutional

rights which is a higher threshold than a mere violation it's constitutional rights

has been reached. Burum, 2014 U.S. Dist. Lexis 191646, 2014 WL 12596719, at *4.

The defendant alleges that the Government improperly seized the money on or

about August 19, 2014 from petitioner's mother's home at 4895 Lakewood Drive San

Bernadino, California and seized cash in excess of $600,000.00 (Six Hundred Thous

and Dollars). Only $366,000.00 of this cash was sealed by Bowman in evidence

bags at the scene and provided by other agents to Bowman in his official capacity

as a federal law enforcement officer. See #14 in Affidavit in this motion.

According to Rule 41(e), "reasonableness under all the circumstances must be the test when a person seeks the return of property." Movant shows, not only that the seizure was unlawful but that he is entitled to lawful possession of the property.

### Joint and Several Forfeiture
### Unlawful Pursuant to Honeycutt v. United States
### 137 S.Ct. 1616, 198 L.Ed. 2d. 73 (2017)

The district court impermissibly imposed joint and several liability on Mr. Cannon for property attributable to his co-conspirators. IN Honeycutt, 198 L. Ed. 2d. at 83.25 the court stated "]f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as a result of the crime." Id. at 85. In other words, when a defendant did not "obtain" tainted property as a result of the crime, § 853(a) does not authorize forfeiture from that defendant. In cases decided since HOneycutt show that its holding was intended to resolve issues of joint and several liability. For example, in United States v. brown, the Third Circuit concluded that Honeycutt applied with equal force to another forfeiture statute, 18 USC § 982(a)(2). No. 15-1505, 694 Fed. Appx. 57, 57-58 (3d. Cir. Aug. 9, 2017); see also United States v. Gjeli, 867 F. 3d. 418, 426 (3rd Cir. 2017)(same). The Third circuit reversed the trial court's imposition of joint and several liability for a forfeiture money judgment. brown, 694 Fed. Appx. at 57-58. This decision was based on the similarities between § 982(a)(2) and § 853 limiting forfeiture to property "constituting" or "derived from "proceeds obtained "directly or indirectly" from a crime. The Third Circuit also found that the statute's use of the term "obtained" showed that forfeiture was limited in terms of personal possession or use. Id. LIkewise, in Gjeli the Third Circuit reversed the district court's imposition of joint and several liability for forfeiture. 867 F.3d. at 427. The Gjeli Court remanded for the district court to determine the amount of forfeiture attributable to each criminal defendant. IN further example,

the tenth Circuit reversed a forfeiture judgment where the district court had

not addressed the amount of tainted proceeds that the defendant had "obtained".

UNited States v. Pickel 863 F.3d. 1240, 1260-61 (10th Cir. 2017).  The court in

Pickel determined that under Honeycutt, "when a defendant did not 'obtain' taint-

ed property as a result of a crime, §853(a) does not authorize forfeiture from

that defendant. Similarly, in United States v. Carlyle, the Eleventh Circuit

applied HOneycutt to (296 F.Supp. 3d. 1259) another forfeiture statute No. 15-

12977, 712 Fed. Appx. 862, 2017 U.S. App. LEXIS 20324, 2017 WL 4679564 (11th

Cir. Oct. 18. 2017)  In that case, the government conceded that the defendant

co-conspirator could not be jointly and severally liable for the entire amount

of proceeds from a wire-fraud scheme. 2017 U.S. App. LEXIS 20324, 2017 WL

at *3.  The government asked for a remand to determine "the amount of proceeds

directly obtained by Defendant.  The Eleventh Circuit remanded the case to the

district court to "determine the appropriate amount of monetary forfeiture to

be imposed on Defendant."

**This Court did not Order the Forfeiture**

**of funds stolen from defendant by F.B.I. Agent**

See 21 USC § 853(p)  ("the court shall order the forfeiture of any other property

of the defendant") (emphasis added); Ripinsky, 20 F.3d at 362 (stating "the court

shall order the forfeiture of substitute assets")  (emphasis added); Newman, 659

F.3d. at 1242, abrogated on other grounds, Honeycut, 137 S.Ct. at 1632 (holding

that "shall order" is mandatory for the district court) United States v. Alamoudi,

452 F.3d. 310, 314 (4th Cir. 2006)(holding "the underlying statutory scheme...

mandated the district court to order forfeiture of substitute assets").

Rule 32.2(c)(1)(B) allows the Court to "at any time enter an order of forfeiture

or [to] amend an existing order of forfeiture to include property that...is

substitute property that qualifies for forfeiture under an applicable statute."

Rule 32.2(e) allows the government to seek substiute property." United States v.

4 of 28

Newman, 659 F.3d. 1235, 1242 (9th Cir. 2011) (citing 21 USC § 853(p)), abrogated on other grounds, HOneycutt v. Unites States 137 S.Ct. 1626, 1632, 198 L. Ed. 2d. 73 (2017). "If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must...enter an order forfeiting that property, or amend an existing preliminary or final order to include it[.]" Rule 32.2(e)(2)(A). "[T]he law provides that if, upon conviction, forfeitable assets are unreachable by the government, the court shall order the forfeiture of substitute assets:  property of the defendant that is not connected to the underlying crime."

2i USC § 853(p) "carries its own set of procedural and substantive requirements before the court may order the forfeiture of substitute property." Newman 659 F.3d. at 1242;  United states v. Candelaria-Silva, 166 F.3d. 19, 42 (1st Cir. 1999) ("To obtain an order forfeiting property as a substitute asset, the government need only comply with the requirements of § 853(p)".  In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) or paragraph (1), as applicable." 21 USC § 853(p)(2).  The United States must show that one of the requirements of section 853(p) is satisfied in order to substitute and forfeit. This has not been done, and there is no basis for the government to do so.

### Reverse Forfeiture is in order

The search warrant used in the case at bar was bad; the government's seizure was unauthorized. In Giles v. U.S. 284 F.268 CA1 denial of the motion for it's return was error.  So also, was the amission of the seized property as evidence against Giles.  Gouled v. U.S. 255 U.S. 298, 41 Sup. Ct. 261, 65 L.Ed. 647; Amos v. U.S. 255 U.S. 313, 41 Sup. Ct. 266, 65 L.Ed. 654; Boyd v. U.S. 116 U.S. 616, 6 Sup. Ct. 524, 29 L.Ed. 746; Weeks v. U.S., 232 U.S. 383, 341, 58 L.Ed. 652, L.R.A.

1015B, 834 Ann. Gas. 1915C, 1177; Silverthorne LUmber Co. U.S. 241 U.S. 385, 40

Sup. Ct. 182, 64 L.Ed. 319; Woods v. U.S. (C.C.A.) 279 Fed. 706, 710; Honeycut

v. U.S. (C.C.A.) 277 Fed. 941 U.S. v. Bush (D.C.) 269 Fed. 455;  JOhnston v. U.

S. 87 Fed. 187, 3 OC.C.A. 612; Ripper v. U.S. 178 Fed. 24-24, 101 C.C.A. 152; U

S. v. Baumort (C.C.) 179 Fed. 735; U.S. v. Friedberg (D.C.) 233 Fed. 313; U.S.

v. Rykowski (DC) 267 Fed. 866; U.S. v. Meresca (D.C.) 266 Fed. 713; Veeder v.

U.S., 252 Fed. 415, 164 Cr. A. 338 U.S. v. Yuckkee (D.C.) 281 Fed. 228; Bram v.

U.S. 168 U.S. 532, 18 Sup. Ct. 183 42 L.Ed. 568 2017 S.Ct. U.S. Sup. Ct. 137 S.

Ct. 1626 Honeycutt v. U.S. March 29. HOLDING:

> [1] 21 USCS § 853(a)'s limitation of forfeiture to, tainted property acquired or
> used by the defendant, together with the plain textof 21 USCS § 853(a)(1)
> forclosed joint and several liability for co-conspirators: [2]- Forfeiture
> pursuant to 21 UsCS § 853(a)(1) was limited to property defendant himself act-
> ually acquired as the result of the crime; [3]- In the instant case, because
> the government conceded that the defendant had no ownership interest in his
> brother's store and did not [personally] benefit from the sale fo a product
> used in methamphetamine production 21 USCS § 853 did not require forfeiture.

In U.S. v. Papa's 715 Fed. Appx 88 2018 CA2, the parties agreed that the

forfeiture order imposing joint and several liability on Fiumano in the amount

of $11,975,404.13 rerpesenting the entire aount of the scheme's proceeds, must

be vacated in light of Honeycutt v. U.S. 137 S.Ct. 1626, 1630, 198 L.Ed. 2d. 73

(2017) (holding that a defendant cannot be held "jointly and severally liable

for property that his co-conspirators deerived from the crime but that the

defendant  himself did not acquire.

Movant was prejudiced by Not being able

to Hire Counsel of his Choice

See DISSENT by Chief justice Roberts in U.S. Supreme Court case Kaley v. United

States 571 U.S. 320 Oct. 16, 2013 where the 500,000 from Equity line was im-

properly considered as in movant's case as being subject to forfeiture under

18 USC § 981(a)(1)(c) as "proceeds" of the alleged crimes. Prosecution obtained

an exparte order pursuant to 21 USC § 853(e) freezing all of the assets listed

in the indictment including the certificate of deposit money which had been

set aside for legal fees.  The defendant moved to vacate the order requesting a
hearing to argue that there was no probable cause to believe their assets were
forfeitable because their alleged conduct was not criminal.  The government ad-
mitted that it had been able to trace only $140,000 in alleged criminal proceeds
to defendant; this led the magistrate Judge to question the lawlessness of re-
straining the listed assets.  Then the government did a [superceeding indictment]
just as in movants case thus [authorizing] forfeiture of property that "consti-
tuted or was derived from proceeds traceable to "a qualifying criminal violation.
The criminal forfeiture of property that "constituted or was derived from proceeds
traceable...928(a)(1) authorizes forfeiture of property involved in a qualifying
offense or "any property traceable to such property".  The Superceeding Indict-
ment in that case exceeded 2 million over the CD reserved to pay legal expenses.
The District Court entered the broader order, requested by the government.  The
restrant remained in place.(188 L.Ed.2d.66). Roberts continued:

> The issue at stake here implicates fundamental constitutional principles.
> The Sixth Amendment provides that "[i]n all criminal prosecutions, the
> accused shall enjoy the right...to have the Assistance of Counsel for his
> defense."  "In many ways this is the most precious right a defendant has
> because it is his attorney who will fight for the other rights the defendant
> enjoys."  U.S. v. Cronic 466 U.S. 648, 653-654, 104 S.Ct. 2039, 80 L.Ed. 2d.
> 657. (1984).  And more than 80 years ago, we found it "hardly necessary to
> say that, the right to counsel being conceeded, a defendant should be afford-
> ed a fair opportunity to secure counsel of his own choice."  Powell v.
> Alabama 287 U.S. 45, 53, 53 S.Ct. 55 77 L.Ed. 158 (1932).

In 2006 the Supreme Court called the "right to select one's counsel of one's
choice...the root meaning of the constitutional guarantee" of the sixth amend-
ment.  U.S. v. Gonzalez-Lopez, 548 U.S. 140, 147-148, 126 S.Ct. 2557, 165 L.Ed.
2d. 409.  The Amendment requires "that a particular guarantee of fairness
provided to wit, that the accused be defended by the counsel he believes to
be the best." Id at 146 126 S.Ct. 2557 165 L.Ed. 2d 409.  An individuals right
(571 US 345) to counsel of choice is violated "whenever the defendants choice is
wrongfully denied,: and such error :prevades the entire trial." id at 150, 126

S.Ct. 2557, 165 L.Ed. 2d. 409. A violation of this right is therefore a "Structural Error." Ibid: that is, one of the very few kinds of errors that "undermine the farness of a criminal proceeding as a whole." U.S. v. Davila 569 U.S. 597, 611, 133 S.Ct. 2139, 1511 2013. The S.Ct. in U.S. Monsanto, 491 US 600, 615, 109 S.Ct. 2657, 105 L.Ed. 2d. 512 (1989) acknowledged and reserved [the crucial question whether a defendant had the right to be heard before the Gov. could take such action Id. at 615 n. 10. 109 S.Ct. 2667 105 L.Ed. 2d. 512 [1]. "A fair trial in a (134 S.Ct. 1108) fair tribunal is a basic requirement of due process." (571 US 346) In re. Murchinson 349 U.S. 133, 136, 75 S.Ct. 623 99 Led 942 (1955). Issues concerning the denial of counsel of choice implicate the overall fairness of the trial because they "bear [] directly on the "framework within which the trial proceeds." Gonzalez-Lopez supra, at 150, 126 S.Ct. 2557 165 Led. 2d. 409 (quoting Arizona v. Fulminante 499 US 279, 310, 111 S.Ct. 1246, 113 L.Ed. 2d. 302 (1971) The government failed to prove [before trial] that (1) defendant had committed an offense giving rise to the forfeiture and (2) the targeted assets have the requisite connection to the alleged criminal conduct 21 USC § 853 (e) (1)(A). The defendant has a right to show that the restrained assets are not actually proceeds of the charged criminal offense....that 2nd prong of the required showing is not satisfied by the government and warrants a reversal of the forfeiture in this case and a return of the excess funds taken even beyond The [Superseding Indictment] D.E. 53 10/21/14 page 5 of 6 line 13-14 Case 2:14-cr-00213-MRH .

The factural content in this motion will allow the court to draw the required reasonable inference that FBI and the government is liabile for the misconduct alleged. Movant requests that this Court construe the allegations of the pleadings liberally and afford the movant with any benefit of doubt. See Hebbe v. Pliler, 627 F.3d. 338, 342 (9th Cir. 2010). The allegations of material facts below must be taken as true and construed in the most favorable

light to movant Love v. United States, 915 F.2d. 1242, 1245 (9th Cir. 1989).
Below are claims which are plausible on their face.  The allegations included
are sufficient to state a claim on which relief may be granted.  This motion is
timely.  This motion does allege and set forth factual allegations sufficient to
provide the FBI and Government fair notice of what movant's claims are and the
grounds upon which they rest.  See E.G., Briazil v. United States dept. of the
Navy, 66 F.3d. 193, 199 (9th Cir. 1995);  McKeever v. Blaock, 923 F.2d. 795, 798
(9th Cir. 1991).

The liability which Mr. Cannon seeks to impose is listed throughout this
motion and the parties are listed within.  The parties are those who are known
and those who are unknown within the employ of the F.B.I. or working under the
jurisdiction of the F.B.I. within the states of Pennsylvania, California, and
Ohio, and potentially in other jurisdictions including Washington D.C..  These
parties worked with Scott Bowman (Criminally prosecuted F.B.I. Agent).  Mr.
Cannon comes seeking to impose liability on these parties for tortious conduct
including but not limited to their violations of 18 U.S.C. 2511;  15 U.S.C. §
78u-6; 18 U.S.C. § 1512 (b); 18 U.S.C. § 241; 18 U.S.C.S. § 1961(1); and 18
U.S.C. § 1512 (c)(2) and in the alternative, aided and abetted former
disgraced F.B.I. Agent "Bowman".

The actions of Agent Bowman and his privies were in opposition to the
constitutional oath of office [not to] violate the law, or protect themselves
and other fellow law enforcement officers from possible state or federal in-
vestigation and or prosecutions; also violations of 18 U.S.C.S.§ 1512 (b)(3)
During the timeframe of an investigation by Agent "Bowman" of Mr. Cannon, based
on information and belief, the parties listed and unknown as defentant's con-
spired with "Bowman" or instructed subordinate agents on methods and means to
steal over $366,000 of money from the Cannon family members who were not a part
of the investigation and who were not mentioned within any warrant for search

and seizure.  "Bowman" has admitted to stealing this money in his criminal pro-

ceedings.

## Conspiracy to Defraud

## RICO

Mr. Cannon asserts that the defendants in this action combined in efforts to

conspire to defraud him and did defraud him out of over $600,000.00 of currency

and othe rproperty, which was not proceeds from any criminal enterprise as

alleged by [f]ormer F.B.I. Agent Scott Bowman.  These actions violated many

federal and state civil and criminal statutes not limited to California Penal

Code § 496(a).  This is a claim for civil remedies under § 496 (c).  Bell v.

Feibush, 212 Cal. App. 4th 1041, 1047. 151 Cal. Rptr. 3d. 546 (2013) (holding

that criminal conviction under § 496(a) was not required to establish civil

liability under § 496 (c), the elements of both provisions are the same).  See

also article at (http://Washingtontimes.com/news/2016/may/3/ Scott-bowman-fomer

fbi-agent-pleads-guilty-steali/) dated 6/15/17 5:58 pm titled "Scott Bowman,

former FBI agent, pleads guilty to stealing cash from drug investigations";

money which belongs to Cannon.

It is also admitted and [f]ormer FBI agent Scott Bowman has been convicted

under his status as Special agent of the "F.B.I." [D.E. 1 (5:15-cr-00047-3GV)

filed 06/03/15)) of violations of 18 U.S.C. § 654; Conversion of Property by a

Federal Officer or Employer; 18 U.S.C. § 1512 (c) (2):  Obstruction of Justice;

18 U.S.C.S. 1512 (b) (3): Witness tampering; 18 U.S.C. § 981 (a)(1)(c), 28 U.

S.C. § 2461 (c), 21 U.S.C. § 853 (p); [criminal forfeiture], "specifically"

involving the actions of [f]ormer FBI Agent Bowman and his privies and co-

defendnats' in their conspiracy to defraud movant Cannon in this case.  See

Affidavit of Lionel Cannon in the instan tmotion.

The RICO statute includes a private right of action "by which'[a]ny person

injured in his business or property' by a RICO violation" may seek damages and

the cost of the suit. Rotella, 528 U.S. at 552 (quoting 18 U.S.C. 1964(c)).

This case has racketeering activity based on a minimum of two predicate acts

[See Cannon Affidavit], a criminal enterprise in which the defendants partici-

pated, [See [f]ormer FBI Agent Bowmans' testimony referenced in Cannon Affidavit

where Bowman at his own sentencing admitted that others stole Cannon's money

with him; and a causual relationship between the predicate acts and the harm

suffered by the movant [also admitted to on the record] See 18 U.S.C. §§ 1961-68

which were violated in this case by Bowman and the other defendants in this

civil case. see Sedima S.P.R.L. v. Imrex Co. 473 U.S. 479, 496-97, 105 S.Ct.

3275, 87 L.Ed. 2d. 346 (1985).

### 4th Amendment Violations within RICO Activities

Within the search warrant agent Bowman and other defendants did not have a

physical description that brought them to the right place (home to search) [830

F.2d. 146] Cf. United States v. Turner, 770 F.2d. 1508 (9th Cir) cert. denied,

475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed. 2d. 334 (1985). There was not only a

reasonable probability that another premise might mistakenly be searched, but

another premise [was] searched. That premise was 4895 Lakewood Dr. San Bernadino

California 92470 See Exhibit 1. That premise was not that of Lionel Cannon nor

that of his sister Misha Cannon but was the home of his parents (described in the

search warrant) by [f]ormer FBI Agent Bowman as funds held by parties ]from the

sale of controlled substances]. This currency was stolen by [f]ormer FBI Agent

Bowman and his privies. Additionally in his own affidavit for the search warrant

at 4895 Lakewood,- the parents home that, "During this investigation, agents

including myself, observed MISHA CANNON driving a silver Lexis ("the Lexus")

bearing California registration 4BSX053." A California Department of Motor

Vehicles inquiry indicates the Lexis is registered to Misha C. Caldwell at

SUBJECT PRIMISES 1. Seen at pg 8 #8 of the search warrant. However, Misha J.

Cannon has never had a drivers license nor registration of that vehicle. This

was only used to allow Bowman and privies to steal funds held from the safe owned by Cannon in the home of Cannon's mother.  The search warrant was for [the wrong house].  The [wrong address] that Bowman and other defendants in this case had, was due to their own careless and lack of common prudence; "they had not carried out their duty to get the right particulars; they did not disclose what they had a duty to discover and disclose."  See Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 1018, 94 L.Ed. 2d. 72 1987.  The information they gave the Judge misled the court.

The evil guarded against the Fourth amendment is doubled when the particularity of the warrant is an erroneous particularity.  The result had was a frightening middle of the night invasion by police of the home of [innocent people].  The appropriate sanction for such disregard of an explicit constitutional offense has long been recognized as suppression of the evidence unconstitutionally obtained;  as the officers were reckless in prepairing their affidavit, they are not protected by good faith reliance on the warrant.  United States v. Leon 468 U.S. 897, 926, 82 L.Ed. 2d. 677, 104 S.Ct. 3405 (1984).  To the defendant's and privies; they are not protected under the color of law against the requested damages in this action.

### Amount of Damages

As this motion is filed under the Securities Act 15 U.S.C. §§ 77a-77aa (1988), the Racketeer Influenced and Corrupt Organizations act ("RICO"), 18 U.S.C.§§ 1961-1968 (1988), and pendent claims for fraud and deceit, this complaint seeks actual damages of $25 Million, additional interest, additional unspecified damages and treble damages under RICO.

### Diversion of Stolen
### To Personal Use of FBI AGENT

Movant alleges and the record shows that FBI Agent (Now imprisoned) diverted currency belonging to himself and not a part of any criminal enterprise nor from

a criminal enterprise, for his own use to an extent that exceeds $600,000.  This
pleading is sufficient under Rule 8 (a) and (e) F.R.Civ. P. to permit this
honorable court to proceed.  No motion for a more definite statement (Rule 12 (e))
was made.  The Supreme Court reinterated that "[w]hen a court evaluated a RICO
claim for proximate causation, the central question it must ask is whether the
alleged violation led directly to the movant's injuries Anza v. Ideal Steel
Supply Corp., 547 U.S. 451, 126 S.Ct. 199, 164 L.Ed. 2d. 720 (2006) at 461.  And
in Hemi Group LLC v. City of New York, 559 U.S. 1, 130 S.Ct. 983, 175 L.Ed. 943
(2010), the court emphasized that a claim would not meet RICO's direct relation-
ship if it required the court to move beyond the first step in the causal chain.
Id at 8-12; See also HOlmes, 503 U.S. at 271 ("The general tendency of the law,
in regard to damages at least, is not to go beyond the first step." (quoting
Associated General Contractors of Cal, Inc. v. Cal. State Counsel of Carpenters,
459 U.S. 519, 534, 103 S.Ct. 898, 74 L.Ed. 2d. 723 (1983)).

### Parties to This Action

The complete names of all parties to this action as of this date are not
known however some of the additional parties are as follows SA Chris Dotson FBI;
TFO Josh Smith SBSO; TFO Jeremy Dean SBSO; TFO Brad Bonnet SBSO; TFO Jon Plummer
SBPD; TFO Larry Myhre CHP;  Officer Mendenhall CHP K-9 handler as well as un-
known FBI agents in California; Pennsylvania and Ohio.  All parties known in
fact worked for the FBI.

### This Motion is in compliance with

### Federal Rules of Civil Procedure 8 (a)(2)

This motion contains a "short and plain statement" of the claim showing
that the pleader is entitled to relief.  While this pleading does not require
"detailed factual allegations" it is beyond the threshold of conceivable and is
in fact plausible and contains much more than formulaic recitations of the
elements of a cause of action.  This motion contains sufficient factual matter

when accepted as true.  This motion before the court should survive a motion to dismiss as it contains sufficient factual matter when accepted as true states a claim to relief that is plausable on it's face.  The movant pleads factual content that allows the court to draw the reasonable inference that defendants are liable for the misconduct alleged.  This court has the duty to construe liberally a pro se party's pleadings.  Estell v. Gamble 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d. 251 (1976).

This motion states a claim that is pled with the necessary factual content for the court to draw the reasonable inference that defendants are liable for the conduct alleged, therefore as "all well pleaded facts are accepted as true, and the reasonable inferences therefrom when construed in the light most favorable to the movant"; this motion should not be dismissed.  This movant has shown past harm and that he is likely to be damaged in the future by the complete disregard for his and his families' 4th Amendment rights.

### Unjust Enrichment

### Restitution

IN California "there is not a stand aline cause of action for 'unjust enrichment'", instead, that term is synonymous with restitution."  Astiana Hain Celestial Group, Inc. 783 F.3d. 753, 762 (9th Cir. Ct. Ap. 2010), Jogani v. Superior Ct. 165 Cal. App 4th 901, 81 Cal. Rptr. 3d. 503, 511 (Cal Ct. App. 2008). When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quisicontract claim seeking restitution.'" (quoting Rutherford Holding LLC v. Plaza De. Ray, 223 Cal. App. 4th 221, 166 Cal Rptr. 3d. 864, 872 (Cal. Ct. app 2014)).  A quasi-contract claim is an equitable claim alleging that the "defendant has been unjustly conferred a benefit 'through mistake, fraud, coersion, or request." Id (quoting 55 Cal Jur. 3d. Restitution § 2):  See also McBride v. Boughton, 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d. 115, 112 n.6 (Cal Ct. app 2004).

One could argue that movant's equitable claim of unjust enrichment
in this motion should be dismissed as duplicative of movant's breach of contract
and fraud claims. "But there is no rule against inconsistant pleadings in *** a
single action."  Peterson v. McGladrey & Pullen, LLP 676 F.3d. 594, 597 (7th Cir.
2012)( quoting Fed. R. Civ. P. 8 (d)(3) ("Aparty may state as many separate
claim or defenses as it has, regardless of consistency.")).  See also Astina 783
F.3d at 762-63 ("To the extent the district court concluded that the casuse of
action was nonsensical because it was duplicative of or superfluous to other claims,
this is not grounds for dismissal (citing Fed. R. Civ. P. 8 (d)(2) ("A party may
set out 2 or more statements of a claim or defense alternatively or hypotheti-
cally, either in a single count or defense or in seperate ones."))); Loop Al Labs
Inc. v. Gatti, 2015 U.S. Dist. LEXIS 117268, 2015 WL 5158639, at * 6-7 (N.D. Cal.
Sept. 2, 2015 (same).  While movant's unjust enrichment claims may eventually give
way to movant's breach of contract claims; considering the oblgation of Agent
Bowman to carry out his duty as an F.B.I. Agent, movant may plead in the alter-
native at this stage of the litigation.  See In Re: Fluid Master, Inc., Water
connector States District Court for the Northern District of Illinois, Eastern
Division 149 F.Supp. 3d. 940;  2016 U.S. Dist. Lexis 12628 Case No. 1:14-cv-05696,
MDL No. 2575 Feb. 3, 2016 decided.  Also consider "A breach may be one of non-
performance, or by repudiation, or by both.  Every breach gives rise to a claim
for damages, and may give rise to other remedies.  Even if the injured party
sustains no pecuniary loss or is unable to show such loss with sufficient cert-
ainty, he has at least a claim for nominal damages.  If a court chooses to ignore
a trifling departure, there is no breach and no claim arises."  Restatement
(Second) of contracts § 236 cmt. a (1979).  However in this instance even the
defendant admitted stealing money from movant and he went [to prison] for it.

Movant alleges that the government workers came to a mutual understanding

and common design to defraud Mr. Cannon and to take funds from the safe and other
assets which were not at all a part of a criminal enterprise.   And they used the
Criminal Justice System to do it.   The allegations in this matter are beyond
formulaic recitations of elements of a cause of action, and should survive any 12b
6 Motino.   See also the affidavit, which is a part of this 1st amended complaint.
The Courts, including the Dist. of Columbia recognizes unjust enrichment as a
species of quisi contract that imposes "in the absence of an actual contract," a
duty ...upon one party to requite another in order to avoid the former's unjust
enrichment], [...to permint [r]ecovery by contractural remedy in cases where, in
fact [there is no contract]" Vita v. Inter-Am. Inv., Corp 570 F.3d. 274, 279-80,
386 U.S. App. D.C. Dept. of Empt. Servs. 605 A.2d. 50,55 (D.C. 1992)).

Movant pleads sufficient facts in this motion to survive any motions to dis-
miss.   See Vila v. Inter-Am. Inv. Corp 570 F.3d. 274, [plaintiffs] allegations'
plausibly [*20] give rise to an entitlement to relief..." (quoting lqbai 556 U.S.
at 679)).   The court has reasoned in Innova Hosp. San. Antonio LP. v. Blue Cross
& Shield of Ga Inc. 2018, 892 F.3d. 719 "Our holding under-scores the principle
that when discoverable information is in the control and possession of a [d]efen-
dant, it is [not] necessarily the movant's responsibility to provide that infor-
mation in his complaint.   See Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d.
Cir. 2015) ("Several courts of Appeals accept allegations on [i]nformation and
[b]elief when the facts are at issue are peculiarly within the movant's possess-
ion.")   As teh Second Cir. has stated, "[t]he Twombly plausibility standard which
applys in civil actions does not prevent a movant from pleading facts alleged
upon information and belief that makes the [inference of culpability plausible.."
Arista Records LLC v. Doe 3, 604 F.3d. 110, 120 (2d. Cir. 2010)(citations omitted).

## Summary

MOvant respectfully request of this honorable court to receive this motion as
conforming to the rules and asks for this court to honor his request in this
motioı and to grant $25,000,000.00 in damages to Lionel Cannon.

AFFIDAVIT

OF LIONEL CANNON PLAINTIFF, PRO SE

This affidavit is base on information and belief and is submitted
under the penalty of perjury.

1.  Speical Agent of the FBI Scott M. Bowman in case (5:15--cr-000
47-3GB) filed 06/03/15 was charged with violations of 18 U.S.C. § 654:
Conversion of Property by a Federal Officer or Employer; 18 U.S.C.
§ 1512(c)(2): Obstruction of Justice; 18 U.S.C. § 1957 Money Laun-
dering; 18 U.S.C. § 1519:  Destruction, Alteration, or Falsification
of Records;  18 U.S.C. § 1512(b)(3):  Witness Tampering; 18 U.S.C.
§981(a)(1)(c), 28 U.S.C. § 2461(c), 21 U.S.C. § 853 (p): [criminal
forefeiture].

2.  Begining in or around March 2005 and continuing through in or
around March 2015, Scott M. Bowman, was a Special Agent of the Fed-
eral Bureau of Investigations ("FBI").

3.  As an FBI Special agent, Scott M. Bowman was entrusted with
the investigation of Lionel Cannon.

4.  Special Agent Scott M. Bowman was authorized to carry a firearm,
and was empowered to make arrests and to conduct searches and seizure
in furtherence of his duty to enforce federal criminal law.

5.  Begining in or around 2006, and continuing until in or around
October 2014, the defendant Bowman was assigned to the Gang Impact
Team ("GIT"), a joint federal-state task force based in San Bernar-
dino, California.

6.  In or around May and June 2014, the defendant, along with other

GIT task force officers, participated in the investigation of plaintiff Lionel Cannon.

7.   During the course of this investigation agent Bowman and others who are defendants in this case on the evening of 8/19/2014 entered a property located at 4895 Lakewood Drive San Bernardino, California at the home of Misha Cannon Caldwell, the mother of Lionel Cannon, and stole over $600,000.00 (Six Hundred Thousand Dollars) from her safe.

8. On or about June 14, 2014, a member of the GIT task force gave the defendant $10,982.00 in United States currency that was seized from 2 individuals on or about June 13, 2014, and recovered from a hotel room on or about June 14, 2014.

9.   The defendant was given custody of that seized currency in his official capacity as a federal law enforcement officer, for the purpose of furthering a federal criminal investigation.

10.   Instead of entering this currency into an FBI evidence storage facility, or submitting the currency for forfeiture to the United States, the defendant misappropriated the currency for his personal use.

11.   Defendant has been charged criminally for this act and has been convicted and sentenced.

12.   On or about June 25, 2014, members of the GIT task force initiated surveillance of an apartment building in Ontario, California. During the course of this surveillance, a member of the GIT obtained approximately $4,600 in United States currency from the person of one of  the residents of one of the apartments within the building, following a traffic stop of a vehicle in which that resident was

traveling.   The search resulted in the seizure of additional currency
as a result of the execution of a state search warrant of an apart-
ment.   On or about June 25, 2014 a GIT task force officer transfer-
red to the defendant Bowman custody of the United States currency
obtained as a result of the traffic stop and apartment search on or
about June 25, 2014.   The defendant was given custody of the seized
currency in his official capacity as a federal law enforcement officer,
for the purpose of furthering a federal criminal investigation.

13.   Instead of entering this currency for forfeiture to the United
States, the defendant misappropriated the currency for his personal
use.

14.   On or about August 19, 2014, at the request of federal law en-
forcement agents in Pittsburg, Pennsylvania, the defendant and other
GIT task force officers participated in the execution of a federal
search warrant at Lionel Cannon's mother's home at 4895 Lakewood
Drive, San Bernardino, California and seized cash in excess of $600,
000.00 (Six Hundred Thousand Dollars)  Only $366,000.00 of this cash
was sealed by Bowman in evidence bags at the scene and provided by
other agents to Bowman in his official capacity as a federal law
enforcement officer.   In or around that evening of August 19, 2014,
the defendant Bowman and another FBI Special agent placed the sealed
bags containing the seized currency in a safe at the FBI's resident
agency in Riverside, California, for overnight storage.

15.   Based on informaion and belief on or about August 20, 2014,
the defendant acting with others retrieved the sealed bags contain-
ing the seized currency from the safe at the GBI's resident agency
in Riverside California.   The defendants opened the sealed bags

containing the seized currency, withdrew a substantial amount of the [p]ortion of the seized currency for their personal use, and repackaged the remaining quantity of currency in [new] evidence bags. The defendants then transported the repackaged portion of the seized currency to a facility in Ontario, California that performs cash counting services for law enforcement agencies in the Los Angeles area, particularly in cases involving the seizure of large amounts of cash.

16. The defendants arrived at and departed from the counting company. An employee of the counting company counted the repackaged portion of the seized currency of $366,800 [property of Lionel Cannon and his family].

17. Defendant Bowman signed a receipt reflecting this total count.

18. Defendant Bowman immediately took steps to conceal their actions by falsifying official FBI reports concerning the Lakewood Drive seizure of Cannon and his family's currency.

19. On or about August 21, 2014, Bowman drafted and submitted an official report, known as an FBI form FD-302, regarding the execution of the search warrant at the Lakewood Drive residence; where Bowman falsely stated that only $366,800 in cash was seized at the Lakewood Drive residence, although the defendant knew that the true amount of cash seized was over $600,000.00 This is additionally alleged in D.E. 1. pg 6 Line 1 & 2 case 5:15-cr-00047-JGB.

20. The defendant also stated in this report that he was accompanied by a Detective with the San Bernardino Police Department and fellow GIT member, during the transportation of the seized currency to the counting company on or about August 20, 2014.

21. Finally, the defendant altered the recipt he received from the

counting company by forging a detective's signature on the receipt next
to his own signature, and attached to this report an electronic image
of the receipt with the forged signature.

22.    In or around August and September 2014, the defendant Bowden and
others spent much of the currency that they misappropriated for their
personal use and enjoyment.

    a.    On or about the morning of August 20, 2014-after they re-
trieved the seized currency from the FBI resident agency but before
they arrived at the counting company facility- the defendants traveled
to an automobile parts dealership, where Bowman spent approximately
$2,353 in cash toward new rims on a new suede headliner for a per-
soinal vehicle.

    b.    On or about August 21, 2014, the day after the defendant trans-
ported a portion of the seized currency to the counting company, the
defendant Bowman purchased a 2013 Toyota Scion FR-S coupe vehicle at a
used car dealership for $27,500 cash.

    c.    Also on or about August 21, 2014, the defendant Bowman open-
edj a new checking account into which he made numerous cash deposits
totaling approximately $10,665 over the course of August and September
2014 in smurffing transactions in order to avoid taxation and detection.

    d.    On or about August 31, 2014, the defendant purchased a 2012
Dodge Challenger coupe vehicle at a used car dealership for $43,850 in
cash.

    e.    In or around late August and early September 2014, the
defendant Bowman spent approximately $9,612 in cash for new speakers,
rims, and tires for the Toyota Scion FR-S and approximately $17,000
in cash for a new sound system, rims, tires, and muffler for the Dodge

b.   On or about October 22, 2014, the defendants contacted De-
tective (defendant) and asked him to provide false information to any-
one who asked, namely that this same detective had been present with
the defendant at the counting company facility on or about August 20,
2014.

c.   The defendant Bowman also sent an email to the same detec-
tive to provide to law enforcement officials if said detective was asked
about the defendant Bowman's activities with respect to the currency
seized on June or August 2014.   In this email, the defendant Bowman
wrote:

> "You accompanied me to [Company A]...on August 20.   I drove the
> trailblazer [.]  We had sealed money from the SB search warrant
> off Lakewood [Cannon family's home].   I had sealed money from
> other seizures (2 or 3) kapaks.   I brought it in, you stayed
> outside.   I had to bring the receipt out for you to sign later.
> We left I told you I mita fucked up cause they put all the money
> together.   That's all. In case your [sic] asked."

d.   On or about October 27, 2014, the defendant sent another
email to Detective A, to which  he attached an electronic image of the
copy of the Company A (Counting company) receipt bearing Detective A's
forged signature, so that Detective A could recognize this signature
and falsely claim it was his own if asked.

25.   ON or about June 14, 2014, in the Central Dsitrict of California,
the defendant, Scott M. Bowman and privies, being officers and em-
ployees of the United States and other agencies thereof, embezzeled
and wrongfully converted to their own use the money and property
..................................................which came into the defendant's

Challenger.

    f.    In or around early September 2014, the defendant Bowman
traveled with his girlfriend to Las Vegas, Navada, where he paid for
accomodations in a suite at a luxury hotel, casino, and resort using
funds from his new checking account.  During this trip, the defendant
used more than $1,000 in cash to pay for tickets to a boxing event.

    h.    In or around late September 2014, the defendant Bowman gave
another defendant in this action a $2,000 cash payment from Cannon's
mother and his familys illegally seized currency.

23.  In or around late August and September 2014, the defendant Bowman
fabricated a cover story to conceal the source of the funds that he
used to pay for these personal expenditures, claiming to several law
enforcement colleagues who aided and abetted his illegal efforts to
steal Money from Cannon and his family that he had recently received an
approximately $97,000 "advance" on his inheritance from his sick father.
In fact the defendant's father never provided the defendant with a gift
of this size or with an  "advance" on the defendant's inheritance.

24.  In or around October 2014, upon learning that other law enforce-
ment officers were inquiring about the disposition of the currency
seized from Cannon and his family, the defendants took steps to conceal
their course of conduct.

    a.    On or about October 21 and 22, 2014, the defendant Bowman
received inquires from an FBI supervisor about the currency seized in
June 2014 to the counting facility on or about August 20, 2014, where
the same company's employees commingled the cash seized in June 2014
with the cash seized from the Lakewood Drive residence on or about
August 19, 2014 (Cannon's family home).

possession and under their control in the execution of such office and
employment, and under color and claim of authority as such officer and
employee, namely, United States currency in an amount greater than
$250,000.00 by June 14, 2014.

26.  On or about June 14, 2014, in the Central District of California
the defendant Scott M. Bowman and privies corruptly obstructed and
continue to obstruct, influence and impede offiical proceedings before
federal District Courts in the United States and before fedreal grand
juries, by knowingly tampering with evidence in violation of Title 18
U.S.C. § 1512 (c)(2).

26.  On or about June 14, 2014 in the Central Dsitrict of California,
the defendant Scott M. Bowman and privies and other officers and em-
ployees of the United States  and of other department and agencies
thereof, embezelled and wrongfully converted to their own use the
money and property .........................in violation of Title 18
U.S.C. Section 654.

27.  On or about the following dates, in the Central District of
California, the defendant Scott M. Bowman and privies knowing that
the funds involved represented the proceeds illegally seized from
Cannon and his family; conducted the following monetary transactinos
affecting interstate commerce with that money with a value of over
$10,000, which property, in fact was derived from 4th amendment vio-
lations; fraud on the court and an illegal search and seizure.

| Date | Monetary Transaction |
|---|---|
| August 21, 2014 | Cash purchase of 2013 Toyota Scion FR-S coup vehicle for $27,500 |
| August 31, 2014 | Cash purchase of 2012 Dodge Challenger coupe vehicle for $43,850 |

All in violation of Title 18, U.S.C., Section 1957

28.  On or about August 26, 2014, Scott M. Bowman and privies, know-
ingly falsified and made a false entry in a record and document, namily
an FBI form FD-302, with intent to impede obstruct and influence the
investigation and proper administration of a matter within the juris-
diction of a department and agency of the United States, namely the
United States Department of Justice, and in relation to and contempla-
tion of any such matter surrounding over $600,000.00 stolen by defen-
dants from Cannon and his family.  This also violated Title 18 USC § 1519.

29.  ON or about October 22, 2014, in the Central District of Californ-
ia, the defendant Scott M. Bowman and privies knowingly corruptly
persuaded other persons and attempted to do so, with intent to hinder,
delay, and prevent the communication to a law enforcement officer of
the United States of informatinon relating to the commission and pos-
sible commission of a federal offense all in violation of Title 18 U.S.
C. Section 1512 (b)(3).

30.  Defendant Scott M. Bowman testified at his sentencing at case
5:15-cr-00047-JGB Doc. 79 Filed 09/21/16 Judicially Noticed and the
United States Attorney; the Federal District Court: and defense coun-
sel represented the following:

    a. (Bowman testified) at page 54 Line 19-23 "I am a bit offended
by the fact that I would have used the United States Navy and the Ma-
rine Corps and go to Iraq and sit in the sand for a year and watch
bullets fly so that I purposely intended to go to the FBI, set out a
purposeful plan [to [s]teal money]]."

    b. (Bowman testified) at Pg 53 Line 1-7  "At the time of my
crimes, despite the fact that I was ascending the ranks of the FBI and
receiving accolades and awards, I was lost.  And I didn't think for one

minute think of the consequences of my actions.  In fact, my value
system was eroded.  That sacrificed my career, the safety and security
of my family, my good standing, my name over, again, [m]oney that
[didn't] belong to me....Line 20-25 "It is absolutely right what Mr.
Herble said, yes, I was the individual who large amounts of currency,
cash, all types of things, were handed to on a regular basis.  I accept
responsibility for the things that I did that were wrong.  I've had to
deal with this over the course of the last few-- I'll call it years..."

    c. (Bowman testifies) page 51 line 10-25 "Your Honor, first and
foremost, I wish to apologize to the Court, to the prosecution, to the
FBI, Department of Justice, Department of OIG because [I took money].
..."It wasn't mine]...[I took it]]..and then I lied about it.".

    d. (Prosecutor states) page 47 Line7-9 "To point the court to
one example, the August 19th 2014, theft [Cannon and his family's
over $600,000.00 Currency] took place only because the defendant had in
mind a detailed [scheme] for how to proceed and how to [get away with
it]...line10-12 "First, he picked up the cash alone; Second, he took
some of the cash out and repackaged the rest in new evidence bags:"...
(line 15-19 Fourth, he falsified reports to state that another officer
was with him so that he wouldn't arouse suspicions"..."Fifth, he forged
that other person's signature on a receipt and submitted that into
evidence"....(Proseutor continues) Pg 46  line 17-19 "He did the same
thing over and over and over again"..."and then he tried to conceal it
by falsifying reports, tampering with evidence"..line 22-23 "This is
not a single instance of conduct.""This is a course of conduct, and it's
a premeditated course of conduct.

    e.(Prosecutor confirms Bowman's rank over other defendants)

Page 42 Line 4-9 "Mr. Bowman was the [senior-most] veteran agent, FBI agent on this FBI-led task force.  He was the lead case agent on cases of tremendous importance.  If there was any agent in which someone was going to try to ignore what happened to protect cases, it would be Mr. Bowman himself."..(The prosecutor continues) Line 21 to 25 "Mr. Bowman's first declaration are the people who, quite frankly, would be the most important witnesses against him at least in terms of eyewitnesses at a trial.  Because two of [those individuals] were the people who act-ually transferred the funds to Mr. Bowman [that he stole]..(Prosecutor continues) pg 40 LIne 20-23 "He was also making the point to us that there was a triable issue as to [three] OF THE PEOPLE WHO WOULD BE KEY EYEWITNESSES AGAIST Mr. Bowman because Mr. Bowman WOULD SAY [they were also stealing money.]"

    f. (Defendant Bowman's Attorney)as to the exsistence of his privies in this theft page 38 Line 3 to  10 "and your Honor, I can just represent to the court there were [individuals] on this task force that were buying themselves cars that were paid off in the matter of months,.that were buying all sorts--they were taking a lot of money throughout a long period of time. And we just wanted the Court to be aware of the information because Mr. Bowman showed very quickly that he wanted to root out that corruption that the **Government is allowing to continue today**"...Line 11-13 "There is absolutely corruption still taking palce on this task force and there's corruption that's been uninvestigated and unprosecuted."

I Lionel Cannon respectfully submit this motion and affidavit to this

honorable court requesting for this court to Grant this motion and
to honor this request for $25,000,000.00 and any other relief that
this court deems appropriate.


Respectfully Submitted,

Lionel Cannon


Lionel Cannon Pro Se Movant
FMC (Federal Medical Center) PO Box 1600 Butner N.C. 27509

CERTIFICATE OF SERVICE

This is to certify that on this the 28th day of February 2019 that I Lionel
Cannon Pro Se Movant have sent a complete copy of my MOTION TO REVERSE FORFEITURE
JUDGMENT AND MOTION UNDER Fed. R. Crim. P. 41 (g) for Return of Property to the
United States Attorney in the Western District of Pennsylvania and to the Federal
District Court in the Western District of Pennsylvania at:

700 Grant St., Room 3110 Pittsburg PA 15219-1906.


Respectfully Submitted,

*L. Cannon*

Lionel Cannon Pro Se Movant

FMC (Federal Medical Center PO Box 1600 Butner N.C. 27509

AO 106 (Rev. 04/10)  Application for a Search Warrant (USAO CDCA Rev. 01/2013)

LODGED

# UNITED STATES DISTRICT COURT

### for the

Central District of California

2014 AUG 19  PM 3:44

| | |
|---|---|
| In the Matter of the Search of | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE |
| **4895 LAKEWOOD DRIVE** **SAN BERNARDINO, CALIFORNIA 92407** | BY: |

Case No.

**ED14-0336M**

AUG 19 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Central _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. § 846, 841(a)(1) and 843(b) | See attached Affidavit |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/

*Applicant's signature*

Scott Bowman, Special Agent(FBI)

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  AUGUST 19, 2014

**SHERI PYM**

*Judge's signature*

City and state:  Riverside, California

Hon. Sheri Pym, U.S. Magistrate Judge

*Printed name and title*

AUSA: Ami Sheth

**EXHIBIT 1**

| 03/06/2019 | 967 | MOTION to Reverse forfeiture judgment by LIONEL CANNON. (Attachments: # 1 Exhibit, # 2 Envelope) (jv) (Entered: 03/06/2019) |
|---|---|---|
| 03/06/2019 | 968 | ORDER as to LIONEL CANNON. On or before 3/27/19, counsel shall file statements of position as to 967 Motion to Reverse Forfeiture Judgment. Signed by Chief Judge Mark R. Hornak on 3/6/19. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (bdb) (Entered: 03/06/2019) |
| 03/19/2019 | 969 | NOTICE OF ATTORNEY APPEARANCE Rachael L. Dizard appearing for USA. (Dizard, Rachael) (Entered: 03/19/2019) |
| 03/19/2019 | 970 | MOTION for Extension of Time to File Response/Reply as to 967 MOTION Reverse forfeiture judgment filed by LIONEL CANNON by USA as to LIONEL CANNON. (Attachments: # 1 Proposed Order) (Dizard, Rachael) (Entered: 03/19/2019) |
| 03/19/2019 | 971 | ORDER GRANTING 970 Motion for Extension of Time to File Response/Reply as to LIONEL CANNON. It is hereby ORDERED that the United States shall file a statement of position as to Defendant's Motion to Reverse Forfeiture Judgment on or before 5/20/19. Signed by Chief Judge Mark R. Hornak on 3/19/19. (bdb) (Entered: 03/19/2019) |
| 04/12/2019 | 974 | NOTICE of Substitution of Attorney Appearance by Jill Locnikar on behalf of USA. Attorney Rachael L. Dizard terminated. (Locnikar, Jill) (Entered: 04/12/2019) |
| 05/14/2019 | 984 | MOTION for Extension of Time to File Response/Reply as to 967 MOTION Reverse forfeiture judgment filed by LIONEL CANNON by USA as to LIONEL CANNON, CECIL PINNIX, MISHA CANNON, JASON HUNTER, TIERIQ PINNIX, DEVONTE WHITE, ELLIS HARRIS, AARON REED, DOUGLAS SMITH, JR, GREGORY PRICE, ANTHONY DONALD, MICHAEL LYONS, WILLIAM BLAIR. (Attachments: # 1 Proposed Order) (Locnikar, Jill) (Entered: 05/14/2019) |
| 05/14/2019 | 985 | ORDER GRANTING 984 Motion for Extension of Time to File Response/Reply as to LIONEL CANNON. The deadline for the United States to file a statement of position as to Defendant's Motion to Reverse Forfeiture Judgment is hereby EXTENDED to 7/20/19. Signed by Chief Judge Mark R. Hornak on 5/14/19. (bdb) (Entered: 05/14/2019) |
| 07/22/2019 | 998 | RESPONSE to Motion by USA as to LIONEL CANNON re 967 MOTION Reverse forfeiture judgment (Attachments: # 1 Declaration of Michael O'Mahoney, # 2 Exhibit A, # 3 Exhibit B) (Locnikar, Jill) (Entered: 07/22/2019) |
| 07/22/2019 | 1000 | ORDER dismissing 967 Motion To Reverse Forfeiture Judgment and Return Property as to LIONEL CANNON (1) Without Prejudice. The relief sought in this Motion is for the return of property seized during a search of Defendant's residence in San Bernardino, CA on August 19, 2014, specifically United States currency taken from a safe by an FBI |

| | | Agent. Upon consideration of the papers of record, the Court concludes that the proper venue for this Motion is in the Central District of California where the search in question occurred. See Fed. R. Crim. P. 41(g). Therefore, the Motion in this Court is denied without prejudice for improper venue.. Signed by Chief Judge Mark R. Hornak on 07/22/2019. Text-only entry; no PDF will issue. This Text-only entry constitutes the Order of the Court or Notice on the matter. (Hornak, Mark) (Entered: 07/22/2019) |
|------------|------|------|
| 07/23/2019 | 1001 | Errata re 998 Response to Motion, by USA as to LIONEL CANNON Reason for correction: Amended certificate of service attached to response. Original certificate of service failed to list address of defendant. (Locnikar, Jill) (Entered: 07/23/2019) |

Lionel Cannon Reg No. 91036-012
FMC Butner – Federal Medical Center
P.O. Box 1600
Butner, NC 27509

Case 5:19-cv-02337-FLA-SP    Document 1    Filed 12/05/19    Page 34 of 36   Page ID
#:34
Case 5:17-cv-01202-TJH-AFM   Document 19-1   Filed 11/29/18   Page 1 of 26   Page ID #:145

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF DOCUMENT DISCREPANCIES

To: ☐ U.S. District Judge / ☑ U.S. Magistrate Judge  ALEXANDER F. MacKINNON

From: I. BERNAL _____, Deputy Clerk     Date Received: 10/26/18

Case No.: ED CV17-01202-TJH-(AFM)     Case Title: Lionel Cannon v. Scott Bowman, et al.

Document Entitled: First Amended Complaint

---

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

|   |   |   |
|---|---|---|
| ☐ Local Rule 5-4.1 | Documents must be filed electronically |
| ☐ Local Rule 6-1 | Written notice of motion lacking or timeliness of notice incorrect |
| ☐ Local Rule 7-19.1 | Notice to other parties of ex parte application lacking |
| ☐ Local Rule 7.1-1 | No Certification of Interested Parties and/or no copies |
| ☐ Local Rule 11-3.1 | Document not legible |
| ☐ Local Rule 11-3.8 | Lacking name, address, phone, facsimile numbers, and e-mail address |
| ☐ Local Rule 11-4.1 | No copy provided for judge |
| ☐ Local Rule 11-6 | Memorandum/brief exceeds 25 pages |
| ☐ Local Rule 11-8 | Memorandum/brief exceeding 10 pages shall contain table of contents |
| ☐ Local Rule 15-1 | Proposed amended pleading not under separate cover |
| ☐ Local Rule 16-7 | Pretrial conference order not signed by all counsel |
| ☐ Local Rule 19-1 | Complaint/Petition includes more than 10 Does or fictitiously named parties |
| ☐ Local Rule 56-1 | Statement of uncontroverted facts and/or proposed judgment lacking |
| ☐ Local Rule 56-2 | Statement of genuine disputes of material fact lacking |
| ☐ Local Rule 83-2.5 | No letters to the judge |
| ☐ Fed. R. Civ. P. 5 | No proof of service attached to document(s) |
| ☑ Other: | Case closed. Plaintiff filed a Notice of Voluntary Dismissal on 10/23/17  *If plaintiff now wishes to pursue these claims, he must file a new case.* |

**Please refer to the Court's website at www.cacd.uscourts.gov for Local Rules, General Orders, and applicable forms.**

---

### ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐  The document is to be filed and processed.  The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk.  Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____        _____
Date                                               U.S. District Judge / U.S. Magistrate Judge

☒  The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to counsel.*  Counsel* shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

_10/31/2018_                        _~ Aly MacK~_
Date                                               ~~U.S. District Judge~~ U.S. Magistrate Judge

* The term "counsel" as used herein also includes any pro se party.  See Local Rule 1-3.

|   |   |   |   |
|---|---|---|---|
| **COPY 1 -ORIGINAL-OFFICE** | **COPY 2 -JUDGE** | **COPY 3 -SIGNED & RETURNED TO FILER** | **COPY 4 -FILER RECEIPT** |

Case 5:19-cv-02337-FLA-SP    Document 1    Filed 12/05/19    Page 35 of 36    Page ID
#:35
Case 5:17-cv-01202-TJH-AFM    Document 19    Filed 11/29/18    Page 1 of 1    Page ID #:144

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  **ED CV 17-01202 TJH (AFM)**                          Date:  **November 29, 2018**

Title      **Lionel Cannon v. Scott Bowman, et al.**

Present: The Honorable:      ALEXANDER F. MacKINNON, U.S. Magistrate Judge

| Ilene Bernal | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings (In Chambers):**

The Clerk is directed to update the docket to reflect plaintiff's current address:

Lionel Cannon  Reg No. 91036-012
FMC Butner – Federal Medical Center
P.O. Box 1600
Butner, NC 27509

The Clerk is further directed to send to plaintiff the Notice of Discrepancy and Order and to return the First Amended Complaint (ECF No. 17) to plaintiff.

IT IS SO ORDERED.

**Initials of Preparer**                                    :
                                                            ib







Lionel Cannon 91036-012
Jesup Satilite Low
2680 Hwy 301 South
Jesup Ga 315 99

United State Distric Court
Central Distric of California
255 E. Temple Street
Los Angeles, CA 90012

legal Mail

FCI JESUP
NOV 2 1 2019
Mail Room/R&D

FEDERAL CORRECTIONAL INSTITUTION
2680 HIGHWAY 301          DATE _____
JESUP, GA 31599

THE ENCLOSED LETTER WAS PROCESSED
THROUGH SPECIAL MAILING PROCEDURES
FOR FORWARDING TO YOU. THE LETTER
HAS NEITHER BEEN OPENED NOR INSPECTED.
IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS
JURISDICTION YOU MAY WISH TO
RETURN THE MATERIAL FOR FURTHER
INFORMATION OR CLARIFICATION.
IF THE WRITER ENCLOSES CORRESPONDENCE
FOR FORWARDING TO ANOTHER ADDRESSE,
PLEASE RETURN THE ENCLOSURE
TO THE ABOVE ADDRESS.